UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **Mohamed Kaba**, and **Abdul Lee**  <br><br>Plaintiffs,  <br><br>v.  <br><br>**LABCORP DRUG DEVELOPMENT INC.**, and **AEROTEK, INC.**,  <br><br>Defendants. | Cause No. 1:23-cv-00084-JMS-TAB |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO AEROTEK'S MOTION TO COMPEL ARBITRATION

Because its confidentiality provision renders the *Mutual Arbitration Agreement* substantively unconscionable, the Court should deny *Defendant Aerotek, Inc.'s Motion to Compel Arbitration and to Dismiss, or Alternatively, to Stay* [Dkt. 15].

1.   Because the *Agreement* not only prohibits the use of class action litigation for mutual self-protection, see [Dkt. 16-1 at 7], but also requires that "[t]he parties shall maintain the confidential nature of the arbitration proceeding and the award, including all disclosures in discovery, submissions to the arbitrator, the hearing, and the contents of the arbitrator's award," the Court should deem it unenforceable on grounds of unconscionability. [Dkt. 16-1 at 8].

2. "An agreement to arbitrate is to be treated like any other contract," and "[i]n determining whether a valid arbitration agreement arose between the parties, [the Court] must look to the state law that ordinarily governs the formation of contracts. . . ." *Geiger v. Ryan's Family Steak Hourses, Inc.*, 134 F. Supp. 2d 985, *993 (S.D. Ind. 2001) (citing *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997)).

3. Here, although Plaintiffs were employed in Indiana, the *Agreement* contains a choice-of-law provision applying Maryland law. [Dkt. 16-1 at 7]. Accordingly, Maryland's contract law governs. *See, e.g., Peterbilt of Ind., Inc. v. Utility Trailers of Indianapolis, Inc.*, 2013 WL 2637250, at *4 (S.D. Ind., June 12, 2013) (applying the parties' choice-of-law provision).

4. Under Maryland law, "[a]n arbitration agreement is 'valid and enforceable, and is irrevocable, *except* upon grounds that exist at law or in equity of the revocation of a contract." *Rankin v. Brinton Woods of Frankford, LLC*, 211 A.3d 645, 655 (Md. Ct. App. 2019) (quoting Md. Code § 3-206(a)). "'[C]ontract defenses, such as . . . unconscionability, may be asserted in court to invalidate an arbitration agreement." *Id*. (quoting *Henry v. Gateway, Inc.*, 979 A.3d 287 (Md. 2009)).

5. An arbitration agreement is unenforceable where it is both procedurally and substantively unconscionable. *Id*. (citing *Doyle v. Fin. Am., LLC*, 918 A.2d 1277 (Md. 2007)). "Procedural unconscionability 'concerns the process of making a contract and includes such devices as

2

the use of fine print and convoluted or unclear language, as well as deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms.'" *Id*. at 655-56 (quoting *Stewart v. Stewart*, 76 A.3d 1221 (Md. 2013)). "Substantive unconscionability, on the other hand, 'refers to contractual terms that are unreasonably or grossly favorable to the more powerful party and includes terms that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law[.]'" *Id* at 656 (quoting *Stewart*, 76 A.3d at 221).

    6.   The *Agreement* is procedurally unconscionable as a contract of adhesion. [Dkt. 16-1 at 3 ¶¶ 8 to 19] (describing the process by which candidates are required to sign arbitration agreements).*See Rankin*, 211 A.3d at 656 (a contract of adhesion is one "that is drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms.'" If the hiring process unfolds as described, the *Agreement* was further buried among other "paperwork," causing it both to be easily missed and depriving Plaintiffs and the putative class of any meaningful opportunity to explore the rights they were asked to release. *Accord id*. (procedural unconscionability found where contract of adhesion was accompanied by "[a] failure to highlight the binding nature of the mediation and arbitration clauses or the significance of what the applicant is being compelled to waive") (quoting *Walther v. Sovereign Bank*, 872 A.2d 735

3

(Md. 2007)).

7. The substantive unconscionability of confidentiality provisions in arbitration agreements appears to be a question of first impression in Maryland. Multiple jurisdictions have, however, found similar provisions to be unconscionable because they are oppressively one-sided in favor of employers.

8. In *Zuver v. Airtouch Communications, Inc.*, the Washington Supreme Court found a similar provision to be unconscionable because "[a]s written, the provision hampers an employee's ability to prove a pattern of discrimination or to take advantage of findings in past arbitrations. Moreover, keeping past findings secret undermines an employee's confidence in the fairness and honesty of the arbitration process and thus, potentially discourages that employee from pursuing a valid discrimination claim." 103 P.3d 753, 315 (Wash. 2004).

9. The Illinois Court of Appeals relied on similar logic in *Bain v. Airoom, LLC,* noting that while "[p]arties are free to settle *unresolved* claims of liability confidentially[, d]epriving only one side of a transaction from access to information about cases where a neutral decision maker has rendered a decision on the merits is something quite different." --- N.E.3d ----, 2022 WL 1699333, at *7 (Ill. Ct. App. 2022). Confidentiality provisions like the one in the *Agreement*, "contribute[ ] to the substantive unconsionability of the contract by ensuring that none of [the defendant's] potential opponents will have access to precedent while,

4

at the same time, [the defendant] accumulates a wealth of knowledge." *Id.* at *6 (quoting *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250) (Illl. 2006)) (internal quotations omitted).

10. The Kentucky Supreme Court reached the same conclusion in *Schnuerle v. Insight Communications Co., L.P.*, collecting authority from multiple jurisdictions in the process. *See generally* 376 S.W.3d 561, 579 (Ky. 2012). "[T]he secrecy provisions of the arbitration agreements both affect the outcomes of individual arbitrations and clearly favor Defendants. They do so by reinforcing the advantages Defendants already possess as repeat participants in the arbitration process." *Id.* (quoting *Acorn v. Household Intern., Inc.*, 211 F.Supp.2d 1160, 1173 (N.D. Cal. 2002)).

11. This oppressive quality is further enhanced by the simultaneous bar on class treatment. [Dkt. 16-1 at 7]. Allowing employers to join such provisions together would first separate employees in litigation and then place them in a cone a silence.

12. The Court should thus deem the *Agreement* unconscionable and unenforceable, and deny AEROTEK's request to compel arbitration.

13. Even if arbitration is compelled, however, the Court should stay rather than dismiss this lawsuit. *E.g., Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) ("the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright.") (quoting *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n. 7 (7th Cir. 2005)).

14. If this matter is stayed pending the outcome of arbitration, the Court should still deny AEROTEK's petition for attorney fees, because the fee provision cited by AEROTEK is awardable only to a "prevailing party."

15. It should also deny AEROTEK's petition for attorney fees if this lawsuit is dismissed because such a dismissal is purely procedural and does not operate as an adjudication on the merits. *See, e.g., Aynes v. Space Guard Prods., Inc.*, 201 F.R.D. 445, 450 (S.D. Ind. 2001) ("The Court lists two judicial outcomes which meet this requirement, which thereby allow a party to be considered 'prevailing' for the purposes of awarding attorney's fees: an enforceable judgment on the merits or a settlement agreement enforced through a court-ordered consent decree.") (quoting *Fisher v. Kelly*, 105 F.3d 350, 353 (7th Cir. 1997)).

16. And even in the event AEROTEK were a "prevailing party" by such a dismissal, it would only be entitled to recover attorney fees in this TITLE VII lawsuit if the "court finds that plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Strategic Mgmt. Harmony, LLC v. Enhanced Bus. Reporting Consortium, Inc.*, 2007 WL 2316484, at * 18 (S.D. Ind., Aug. 10, 2007) (quoting *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). AEROTEK has made no such showing, and it may not contract around this standard – thereby chilling its employees from pursuing federal antidiscrimination claims – by resort to private contract. *See Wilson v. Nationwide Mut. Ins. Co.*, 395 Md. 524, 538, 910 A.2d 1122, 1131

6

(2006) ("A contractual provision that violates public policy is invalid. . . ."). *Accord Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265 (2009) ("federal antidiscrimination rights may not be prospectively waived").

WHEREFORE, because its confidentiality provision renders the *Mutual Arbitration Agreement* substantively unconscionable, the Court should deny *Defendant Aerotek, Inc.'s Motion to Compel Arbitration and to Dismiss, or Alternatively, to Stay* [Dkt. 15]

    Respectfully submitted,

    */s/ Benjamin C. Ellis*
    Benjamin C. Ellis
    HKM EMPLOYMENT ATTORNEYS LLP
    320 N. Meridian St., Ste. 615
    Indianapolis, IN 46204
    P/F   |   (317) 824-9747
    Email  |  bellis@hkm.com