UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS, INDIANA

MOHAMED KABA and ABDUL LEE,

    Plaintiffs,

v.

LABCORP DRUG DEVELOPMENT INC.
and AEROTEK, INC.,

    Defendants.

Case No. 23-cv-00084

**DEFENDANT AEROTEK, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND TO DISMISS, OR ALTERNATIVELY, TO STAY**

    Plaintiffs' Response to Aerotek's Motion to Compel Arbitration is notable for what it does not say. Plaintiffs do not dispute that they received the Mutual Arbitration Agreement before they began their employment by Aerotek, they had an opportunity to review the Mutual Arbitration Agreement, they accepted the terms of the Mutual Arbitration Agreement by electronic signature, and they understood that the Mutual Arbitration Agreement bound both Plaintiffs and Aerotek to resolve any disputes arising from the employment relationship in an arbitral forum. Plaintiffs also do not dispute that the claims asserted in their Complaint fall within the scope of claims that are to be arbitrated. This is enough to create a "presumption of arbitrability." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

    A.    **The Mutual Arbitration Agreement Is Procedurally And Substantively Sound**

    Plaintiffs attempt to argue that the Mutual Arbitration Agreement is procedurally and substantively unconscionable but fall well short of carrying their burden of proving that the claims at issue are not referable to arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). Plaintiffs rely principally on the decision in *Rankin v. Brinton Woods of*

*Frankford, LLC*, 241 Md.App. 604 (2019). The case has little in common with the case before this Court. Unlike the instant Complaint and its Title VII employment claims (ECF No. 1-1), *Rankin* concerns a negligence and wrongful death case filed by the estate and family of a man who died while a patient of a post-acute care center. *Rankin*, 241 Md.App. at 609. And unlike Plaintiffs Kaba and Lee, who undisputedly reviewed and signed the arbitration agreements on their own behalf (ECF No. 16 at 3), *Rankin* concerns complicated questions about whether a gravely ill man was competent to make health care decisions, whether his daughter had agency to make decisions on his behalf, and what knowledge either of them had of the specific terms of a contract, including its arbitration clause. *Rankin*, 241 Md.App. at 617-21.

The details of the *Rankin* arbitration and mediation clauses are also markedly different from those of the Mutual Arbitration Agreement at issue in this case. As an initial matter, *Rankin* concerned an admissions contract that purported to "contain[] your financial obligations, as well as your rights as a Resident of this Facility," and the arbitration provision was simply two numbered paragraphs within the contract as a whole, in the same format as every other provision, and lacking "any apparent emphasis by either bolded, underlined, or italicized language." *Rankin*, 241 Md.App. at 623-624. The court explained that the "failure to highlight the binding nature of mediation and arbitration clauses or the significance of what the applicant is being compelled to waive, supports a finding of a procedural unconscionability." *Id*. In contrast, Plaintiffs here have not identified and there are no analogous signifiers of procedural unconscionability, where it is undisputed that the Mutual Arbitration Agreement is a standalone document, with two pages explaining its terms in plain language. (ECF No. 16-1 at 7-8, 11-12.)

*Rankin* also described an agreement where "the language of the arbitration clause lacks clarity and includes apparent conflicting provisions," including confusion over what rules would

apply, who would decide the dispute, and whether the decision could be appealed. *Rankin*, 241 Md.App. at 625-627. The *Rankin* agreement also imposed a significant $1,000 deposit from any resident who initiated the arbitration process, along with a "loser-pays-all" provision, which the court found to be overbearing. *Id*. Plaintiffs in this case have not pointed to any analogous conflicting or overbearing terms in the Mutual Arbitration Agreement, and there are none.

Plaintiffs also attempt the novel argument, never decided under Maryland law, that the Mutual Arbitration Agreement is substantively unconscionable because it includes both a waiver of class action proceedings and confidentiality provisions. (ECF No. 25 ¶ 7.) Of course, like the federal courts, Maryland state courts permit class action waivers in arbitration agreements. *Walther v. Sovereign Bank*, 872 A.2d 735, 751, 386 Md. 412, 438 (Md. 2005) ("we do not find the no-class-action provision to be so one-sided or oppressive to petitioners as to render the arbitration agreement at issue unconscionable"); *see also Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612, 1623 (2018) (holding that employment arbitration agreements may include class and collective action waivers). That leaves the question whether Maryland state courts would invalidate an arbitration agreement because it includes a confidentiality provision, but Plaintiffs concede the court has never answered that question. (ECF No. 25 ¶ 7.) Accordingly, Plaintiffs' citation to cases decided by courts sitting in other states and applying other, unrelated law, with no indication that the principles are similar to those relevant under Maryland legal authority, are irrelevant to the issue considered here.[1]

---

[1] The confidentiality provision in the Mutual Arbitration Agreement does not make all facets of the arbitration confidential. For example, the fact an arbitration demand has been filed is not confidential; the parties can agree to drop confidentiality; and there are exceptions for applications to a court, judicial action to vacate or enforce an award, or(any other reason required by law. (ECF No. 16-1 at 8.)

Furthermore, if the Court concludes that the confidentiality provision in the Mutual Arbitration Agreement is unenforceable, then both the terms of the agreement and Maryland law dictate that the offending clause be stricken and the remainder of the agreement remains in effect. *See* ECF No. 16-1 at 8 ("If any court of competent jurisdiction finds any part or provision of this Agreement void, voidable, or otherwise unenforceable, such a finding will not affect the validity of the remainder of the Agreement, and all other parts and provisions remain in full force and effect."); *Fowler v. Printers II, Inc.*, 89 Md.App. 448, 465-66 (Md.App., 1991) ("blue pencil" excision of offending contractual language without supplementation or rearrangement of any language is entirely in accord with Maryland law").

For the reasons stated here and in Aerotek's Motion, the Mutual Arbitration Agreement should be enforced, and Plaintiffs' should be compelled to arbitrate their claims.

    **B.**    **Plaintiffs Breached Their Agreements To Arbitrate And Are Responsible Under Their Employment Agreements To Compensate Aerotek For The Fees And Costs It Incurred To Bring This Motion**

Plaintiffs' Responses mischaracterizes Aerotek's request for fees, arguing that Aerotek should not be awarded fees because a ruling on the Motion to Compel is not a ruling on the merits of Plaintiffs' claims. (ECF No. 25 ¶ 14-16.) As explained in Aerotek's Motion, Aerotek's entitlement to fees arises not from Plaintiffs' Title VII claims, but from Plaintiffs' agreements with Aerotek. (ECF No. 16 at 10-12.) Plaintiffs agreed in their the Mutual Arbitration Agreements to file any claims in arbitration, and filing their Complaint in court was a breach of those agreements. (*Id.*) And Plaintiffs agreed in their Employment Agreements to pay fees and costs necessary to enforce the obligations contained in the agreements. (*Id.*)

Plaintiffs' argument that an award of fees would have a "chilling" effect is nonsense. (ECF No. 25 ¶ 16.) Plaintiffs and other employees have an outlet for their claims against Aerotek: the arbitral forum. An award of fees to Aerotek for the costs incurred to bring this

Motion will merely give it the benefit of the bargain it struck with Plaintiffs, which is to proceed in the faster, less formal, and less expensive venue to which all agreed.

Moreover, Plaintiffs' actions after Aerotek's Motion have further exacerbated the fees and costs the company has incurred. After Aerotek filed its Motion, Plaintiffs' counsel contacted the undersigned counsel for Aerotek with a proposal: Plaintiffs would agree to proceed in arbitration and stay the litigation before the Court, if Aerotek would agree to withdraw its request for fees. Aerotek accepted the proposal, but Plaintiffs changed their mind, necessitating this Reply.

## CONCLUSION

For the foregoing reasons, Defendant Aerotek, Inc. respectfully requests that this Court: (1) compel Plaintiffs to arbitrate their claims against Aerotek; (2) dismiss with prejudice Plaintiffs' Complaint against Aerotek; and (3) award Defendant Aerotek the attorneys' fees and costs it incurred in prosecuting this motion.

DATED: March 17, 2023

AEROTEK, INC.

By: /s/ Andrew L. Scroggins
Andrew L. Scroggins (ascroggins@seyfarth.com)
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606-6446
Telephone:    (312) 460-5000
Facsimile:    (312) 460-7000

Counsel for Defendant Aerotek, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on (date), I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record.

                                               /s/ Andrew Scroggins